· [No. 33744.  Department One.  June 13, 1957.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS SMITH, *Appellant*.[1]

*Robert W. Winsor*, for appellant.

*Charles O. Carroll* and *Charles R. Lonergan, Jr.*, for respondent.

FINLEY, J.—This is an appeal from a conviction of grand larceny. The sole assignment of error is that the trial court erred in denying appellant's timely motion for the suppression or exclusion of certain physical evidence and certain testimony of police officers. Appellant contends that the evidence and the testimony resulted from an entry, search, and seizure, which violated RCW 10.79.040, as well as state and Federal constitutional guarantees. He relies upon the "so-called" *exclusionary doctrine* of *Weeks v. United States*, 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341, as the doctrine has been applied in our state as instanced in *State v. Buckley*, 145 Wash. 87, 258 Pac. 1030; and *State v. Rousseau*, 40 Wn. (2d) 92, 241 P. (2d) 447.

[1]Reported in 312 P. (2d) 652.

The writer of the instant opinion, in a concurring opinion in the *Rousseau* case, attempted a critical evaluation of the *exclusionary doctrine* of the *Weeks* case, pointing out that in *State v. Buckley, supra,* our own court said:

" 'It is the rule of the English courts, and is the rule of the courts in a majority of the American states, that the admissibility of evidence is not affected by the manner in which, the means by which, or the source from which, it is obtained. It is held that, if the evidence is otherwise pertinent to the issue, it is no valid objection to its admissibility to show that it was unlawfully or illegally obtained.' "

The concurring opinion in the *Rousseau* case, at page 99, further stated:

"The protection of individuals from illegal arrest, search, and seizure ostensibly is the principal purpose, or rationale, of the rule—and this is laudable; but realistically, there is much to be said for some reasonable modification or exception of the *Weeks* case doctrine as established in our state by the *Buckley* case."

However, the decision of the majority in the *Rousseau* case leaves no doubt that the *exclusionary doctrine* of the *Weeks* case (*supra*) is the law of this jurisdiction, unless and until changed by this court. Thus, at the present time, the question in the instant appeal is a factual one: namely, whether the doctrine is applicable on the basis of the facts and circumstances in the instant case. There was a hearing in the superior court for King county on the motion to suppress the evidence. The appellant and two police officers took the stand and testified as to the facts and circumstances surrounding the alleged unlawful entry, search, and seizure.

The appellant testified that he first noticed two police officers as they were standing in the hallway in the proximity of the door of his own room while he was relaxing in a parlor or day room located down the hall from his own room at his hotel; that the officers thereupon accosted him in the parlor or day room; and that one officer then preceded him and the other officer followed him into his room, whereupon the two officers, without the appellant's permission, unceremoniously and not too tidily made a search

and, also without permission, took possession of two new woolen sport shirts for men. Appellant testified that the two shirts had been left with him two weeks theretofore by a man he knew as "Gastin," and the shirts had been left as a pledge for a two-dollar loan. Parenthetically, it may be stated that the shirts were subsequently identified positively as stolen property.

The appellant signed a written statement, which conflicts with the foregoing testimony. In the statement, he admitted that the shirts were voluntarily surrendered to the police officers, to be checked out by them against information at headquarters relative to stolen property. In the statement, the appellant declared that it was given to the police officers under no threats, duress, or promises.

The police officers had no search warrant. They testified that they went to appellant's hotel room pursuant to a tip that appellant had some stolen property in his possession, but without any knowledge of the theft that had occurred that afternoon involving the two sport shirts. Officer Swanton testified:

"    .   .   .   I knocked on the door. The defendant answered from inside, and he said, 'Who is it?' I said 'Police. We want to talk to you.' So the defendant opened the door and we both identified ourselves, showed our badges to the defendant and I told him again we would like to come in. So he says, 'Come on in.'   .   .   .   Well, when we got inside, I told the defendant, 'Tom,' I said, 'I understand you have some stolen merchandise in this room.' And the defendant denied he had any stolen merchandise. And there were two shirts lying on a table, and were apparently new shirts, and there was a black fiber suitcase, looked like a salesman's sample suitcase, setting in the corner. The suitcase, it was open and empty. It seemed like it was brand new. Anyway, I asked the defendant, 'Where did you get those two new shirts?' And the defendant said, 'Oh, I got them about two weeks ago. Someone left them here as security for a two dollar loan, if he doesn't return and pick them up I am going to keep them or else be out two dollars.' So I told him, 'I have an idea those shirts were stolen.' And I asked him about how it would be if we took those two to Police Department headquarters and checked them against the stolen property list up there. And he agreed that was all

right. And we asked him if we could look around the room, and he said, 'Okay, go ahead.' We picked up three other items of clothing and the two sample shirts, and before we left I asked him about the suitcases. . . . On the following morning we got to work at eight o'clock and we checked over the reports of larceny and burglary reports for the previous day that had been turned in, which I had not seen before, and we ran across one report of a larceny, car prowl, at 77 Spring Street, between two and three p.m. on the afternoon of May 5, 1955. The merchandise taken was described as twelve shirts. The two of those shirts we had picked up, they were similar type, the type we had picked up in the defendant's room and the black fiber suitcase reported stolen in that report also corresponded with the description of the fiber suitcase found in the defendant's room. Even to the trade name on it. Which was Fiber Products Manufacturing Company. So we called up Mr. Bergman and asked him if he would come up to the police headquarters and look over some shirts. So Mr. Bergman came up to the police headquarters. He stated he positively identified those shirts as two of the shirts that were taken in the larceny on the day before, May 5, 1955. . . . "

Upon the conflicting testimony at the hearing on the motion to suppress evidence, the trial judge concluded (a) that appellant Smith had consented to the entry, search, and seizure; (b) that his right to object to the search and seizure had been waived; (c) that the physical evidence (the two sport shirts) and the testimony of the police officers relative thereto was properly admissible in the trial of the case on the merits.

██ The exclusion of improperly obtained evidence is a privilege. It can be waived if done so voluntarily, as a matter of free will and without compulsion. In *Manchester Press Club v. State Liquor Comm.*, 89 N. H. 442, 200 Atl. 407, 116 A. L. R. 1093, the New Hampshire court said:

"The right to be secure against unreasonable search and seizure is one that may be yielded. No rule of public policy forbids its waiver."

See, also, *State v. Raum*, 172 Wash. 680, 21 P. (2d) 291; *State v. Hart*, 26 Wn. (2d) 776, 175 P. (2d) 944; *People v. Preston*, 341 Ill. 407, 173 N. E. 383, 77 A. L. R. 631; 79 C. J. S. 816, § 62; 47 Am. Jur. 547, § 71.

As to a motion to suppress evidence, the burden of proof lies on the movant. In *State v. Ditmar*, 132 Wash. 501, 232 Pac. 321, the court said:

"It is not the rule that the state must show as a condition precedent to the introduction in evidence of intoxicating liquor that it came into the possession of the liquor lawfully. This is an objection which the defendant must make, and when he makes it he must himself show that its possession was obtained by the state unlawfully."

The question relative to consent or waiver of the privilege was a factual one. The evidence was conflicting. Under the circumstances, as was his right to do, the trial judge apparently disbelieved the appellant's testimony. Relying upon portions of the statement given to the police by the appellant, and upon the testimony of Officer Swanton, corroborated by the testimony of Officer Fawcett, the court denied the motion to suppress the allegedly questionable evidence. We think his action was amply supported by the evidence before him, and that it constituted a sound and proper exercise of judicial discretion. Under these circumstances, upon review here, we will not substitute our judgment for that of the trial court. The denial of the motion to suppress was not error.

The jury's verdict of guilty, and the court's judgment thereon, should be affirmed. It is so ordered.

HILL, C. J., MALLERY, and OTT, JJ., concur.

SCHWELLENBACH, J., concurs in the result.