[No. 42276.    En Banc.    November 1, 1973.]

THE STATE OF WASHINGTON, *Petitioner*, v. JESSE PATTERSON
*et al.*, *Respondents.*

*Donald C. Brockett, Prosecuting Attorney, Robert B. Henderson* and *Clinton J. Merritt, Jr., Deputies,* for petitioner.

*R. Max Etter, Sr.,* for respondents.

HALE, C.J.—While executing a search warrant, Spokane

police officers found two capsules of heroin on the searched premises, and one capsule of heroin on the person of defendant Jesse Patterson. They also found what the parties describe as "miscellaneous narcotics paraphernalia, and miscellaneous papers and pieces of identification" apparently connecting the defendants with the premises.

Seizing the narcotics and other articles, the officers arrested defendants Jesse Patterson and Donald Richard Morgan at the scene of the search, and the prosecuting attorney filed a complaint against them in Spokane County District Court. August 5, 1971, the prosecuting attorney superseded the district court complaint by filing an information in superior court charging Patterson and Morgan with unlawful possession of the narcotic drug, heroin.

Defendants moved to quash the search warrant and suppress the evidence seized in the search. The motion came on for hearing at the call of the regular weekly motion docket of the Superior Court for Spokane County before Judge George T. Shields who denied the motion October 15, 1971. Thereupon, the case was assigned for trial before Judge William H. Williams, to whom defendants renewed their motion to quash and suppress. Following extensive argument, the learned trial judge, concluding that the affidavit supporting the search warrant was legally insufficient because it failed adequately to set forth a probable cause for its issuance, granted the motion to quash and ordered the evidence obtained in the search suppressed. The state, by alternative writ of certiorari, now seeks an order vacating the superior court's order quashing the search warrant and suppressing the evidence.

The search warrant, issued October 22, 1970, from "The Justice Court of the State of Washington In and For the County and District of Spokane" bore the signature of Gordon S. Lower, District Court Judge. There is no contention that Judge Lower was not a legally constituted and duly qualified and acting judicial officer, possessing all constitutional and statutory powers requisite to the issuance of

warrants for search, seizure and arrest. The search warrant recited that one James R. Albright had made complaint on oath to Judge Lower; that the complainant believed that narcotics and dangerous drugs were being unlawfully used, manufactured, sold, given away, furnished and kept on the premises of 613 South Sheridan Street, Spokane; and that the judge found reasonable and probable cause to believe the recited facts to be true. The warrant ordered peace officers to enter the premises of 613 South Sheridan Street in Spokane, and diligently search for and seize all narcotic and dangerous drugs and "furniture and fixtures used or kept for the illegal manufacture, sale, barter, exchange, giving away, furnishing or otherwise disposing" of narcotics and dangerous drugs, and to make a return to the issuing court within 3 days showing all acts done and things seized pursuant to it.

We have accepted review largely because two judges of the superior court on diverging views, in considering the sufficiency of the complaint or affidavit for the search warrant, reached differing conclusions.

The question, therefore, is whether the warrant was issued in violation of either the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

or article 1, section 7 of the state constitution which states:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

More precisely, our function, therefore, after considering all of the information and the manner and form in which it was presented to the judge of the district court, is whether that court had probable cause under the constitutions to issue the warrant. A secondary but inherent question is to what extent may hearsay evidence be included in the com-

plaint, affidavit or testimony upon which the warrant is sought.

■ Reasonableness is the key ingredient in the test for issuance of a search warrant. That is precisely what the federal constitution says and our state constitution necessarily implies. Do the documents or testimony supporting the warrant give a fair-minded, independent judicial officer, on considering all of the facts and circumstances set before him on oath or affirmation, good reason to issue the warrant?

Good reason for the issuance of a search warrant does not necessarily mean proof of criminal activity but merely probable cause to believe it may have occurred. *Beck v. Ohio*, 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). Suspicion, belief and guess alone are not enough. If the affidavit contains none of the underlying facts or circumstances from which the magistrate can find probable cause and is no more than a declaration of suspicion and belief, it is legally insufficient. *Nathanson v. United States*, 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933). And, if the statements of an informant are included in the affidavit or complaint for the search warrant, probable cause means that the issuing magistrate should have before him a substantial and intelligent basis for crediting the report of the informant.

Where the informant's identity is unrevealed, the supporting documents or testimony must provide the issuing court with a stronger basis for finding the hearsay statements credible than if the informant is identified. *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971). In either case, whether of revealed or unrevealed informants, the affidavits or complaint must go beyond mere conclusions that illegal activities are or have been going on in the premises to be searched (*Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)); and mere assertions that the applicant for the warrant harbors a suspicion or belief that articles relevant to prove such activity will be found there are insufficient. *Giordenello v. United States*, 357 U.S. 480, 2 L. Ed. 2d 1503,

78 S. Ct. 1245 (1958); *Nathanson v. United States, supra.*
But the issuance of a search warrant is and always has
been a matter of judicial discretion, the exercise of which
may be tested on review. The ultimate question on review
is whether, in discharging his duties, the judicial officer
who issued the search warrant abused his discretionary
powers.

■ Does this record show that the judge of the district
court authorized an unreasonable search as that term is
meant under the constitution? We think not. When an
application for a search warrant is made to a judicial
officer, he is obliged neither to treat the matter as an adver-
sary proceeding, nor sua sponte to challenge the contents of
the supporting documents. His is the duty to ascertain
whether the warrant sought is being reasonably requested
and on reasonable grounds. At that juncture, the judge is
not dealing with such concepts as reasonable doubt, pre-
ponderance of the evidence, the competence of the wit-
nesses or defendant's rights to confrontation and cross-ex-
amination of witnesses, nor should the judge invoke other
concepts of due process inherent in the Bill of Rights or the
common law other than those necessarily included in the
idea of reasonableness of the search. Such inquiries, if un-
dertaken at the proceeding for the issuance of a warrant,
would be premature and not only premature, but in the
ordinary course of administering the criminal law would
stifle legitimate investigative procedures legitimately to be
carried out.

To render the people secure in their persons, houses,
papers and effects and keep the police from disturbing
them within the specific admonition of the Fourth Amend-
ment and the search provisions of the state constitution,
does not mean, therefore, that the application for a search
warrant be converted into an adversary proceeding, or one
held upon notice, or that a contest must first be arranged
and then resolved. It is now, as it always has been, an ex
parte proceeding. The record of the application hearing,
however, must show that the search and seizure ultimately

to be authorized not only appeared to be reasonable to the issuing judge, but that it turned out to be so upon execution of the warrant. Accordingly, when the constitutions specify that no warrant may issue except upon probable cause and that the probable cause must be shown in some way or other upon oath or affirmation, they fix the ultimate standard—a reasonable basis founded on affidavit, complaint or testimony, for the search to be conducted under judicial sanction and protection.

Neither the constitutions nor the common law make an adversary proceeding out of an application for a search warrant; nor require that it be issued upon notice or be subject to hearing upon notice; nor make it subject to attack or injunction before issuance. What is intended is explicitly stated in the Fourth Amendment—to prohibit unreasonable searches and seizures, and to require that warrants for searches and seizures be issued only for probable cause and upon oath.

In other words:

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invali-

date the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner.

*United States v. Ventresca,* 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

A reasonable search is one based upon probability—a likelihood that evidence of criminal activity will be found. It does not require even a prima facie showing of guilt. *Spinelli v. United States,* 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), makes this categorically clear, in saying:

> [W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U.S. 257, 270-271 (1960).

Thus, when all of the circumstances as related under oath to the issuing magistrate are considered, the question of probable cause is reduced to whether there is a "substantial basis" for the warrant. The policeman's affidavit should not be judged as an entry in an essay contest nor subjected to microscopic examination. *Spinelli v. United States, supra.* A search warrant is issued usually as a pretrial writ, a characteristic of it which the Supreme Court stressed in *United States v. Harris,* 403 U.S. 573, 582, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971), in saying that, before trial, we deal in the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," and that common sense must be the ultimate yardstick. Thus, in the *Harris* case, where the information presented to the issuing judge appears to be less persuasive than that

in the instant case, and had been received from an unnamed person believed by the applicant to be prudent but who feared for his life if his identity was revealed, the warrant was held good. Affirming the principle that hypertechnical examination of the affidavit should be avoided and the routine procedures of police work respected, the court, in *Harris,* sustained the affidavit for the search warrant, saying that the court should respect the " 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." 403 U.S. at 583. The search warrant "must be tested . . . in a commonsense and realistic fashion" for "technical requirements of elaborate specificity . . . have no proper place in this area." *United States v. Ventresca, supra* at 108. Common sense, therefore, is one of the ingredients of the test of reasonableness for the issuance of a search warrant. Probable cause is neither theoretical nor illusory; unrealistic and hypertechnical standards of elaborate specificity are to be avoided. *United States v. Ventresca, supra.*

■ The constitutions do not forbid the assertion of hearsay evidence in the affidavit for a search warrant, and where the affidavit is based in part on the hearsay information supplied by an informant, the search warrant may properly issue if, on final analysis and under all of the circumstances set forth in the affidavit, complaint or testimony laid before the issuing judicial officer, a substantial basis for crediting the hearsay is found and probable cause is shown. *Jones v. United States,* 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *Aguilar v. Texas, supra; United States v. Ventresca, supra; Spinelli v. United States, supra.* The touchstone is reasonableness of the search. *State v. Edwards,* 5 Wn. App. 852, 490 P.2d 1337 (1971). "It will not do to say that warrants may not issue on uncorroborated hearsay." *United States v. Harris, supra.*

■ This court summarized the practical ingredients of probable cause in *State v. Poe,* 74 Wn.2d 425, 445 P.2d 196

(1968), where, in upholding an arrest for probable cause, we said at page 429:

> An officer of a narcotics detail may find probable cause in activities of a suspect and in the appearance of paraphernalia or physical characteristics which to the eye of a layman could be without significance. His action should not, therefore, be measured by what might or might not be probable cause to an untrained civilian passerby, but by a standard appropriate for a reasonable, cautious, and prudent narcotics officer under the circumstances of the moment. *Bell v. United States*, 254 F.2d 82 (D.C. Cir. 1958).

Standards for the issuance of a search warrant, that is, standards for the inference of probable cause, are much less stringent and more widely discretionary than those for the admissibility of evidence or the pleadings in both civil and criminal proceedings. *McCray v. Illinois*, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967). Warrants may be and frequently are sought by police officers under conditions of the utmost urgency with little time or opportunity for consultation with counsel. Supporting documents may have been hurriedly drafted by laymen while in the crucial phase of an investigation under the urgent necessity of obtaining the evidence before it is removed or destroyed. Thus, in order to preserve the evidence from imminent destruction, or obviate an impending crime, or to prevent further criminal activity, circumstances may demand that the application for a search warrant be presented to a judicial officer at late and unusual hours without counsel or prior consultation with counsel. The constitutional provisions against unlawful searches and seizures are not designed to discourage police and investigative officers from seeking the assessment of independent judicial officers, nor to compel the police to take counsel with them at all stages of their investigations. Rather, it is the design of the constitutions to encourage investigating officers to seek the intervention of judicial officers, to require whenever and wherever it is reasonably feasible that the existence or want of probable cause to enter and search a householder's domicile

be decided prima facie by a judicial officer and not by officers of the executive branch. "It is not fit," as Lord Mansfield put it,

> that the receiving or judging of the information should be left to the discretion of the officer. The magistrate ought to judge; and should give certain directions to the officer.

*Leach v. Three of the King's Messengers,* 19 How. St. Tr. 1001, 1027 (1765), cited in *United States v. United States Dist. Court,* 407 U.S. 297, 316, 32 L. Ed. 2d 752, 92 S. Ct. 2125 (1972). In essence, if in the considered judgment of the judicial officer there has been made an adequate showing under oath of circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that evidence thereof will be found in the premises to be searched, the warrant should be held good.

In the instant case, the affidavit presented to the Spokane District Court, we think, provided an adequate basis for a finding of probable cause. (*See* Appendix for the Affidavit.) It stated that affiant had been a police officer with the Spokane Police Department for 15½ years and at the time of the search warrant application, a detective serving in the narcotics section of the department; that he had been given information by a federal narcotics agent whom he had known for 2 years and who had been advised by a reliable and believable informant that traffic in heroin had occurred at 613 South Sheridan Street, Spokane. The affidavit said that affiant knew that this federal narcotics agent had received information from an informant hitherto "reliable and creditable."

The information derived from this informant as was related in the affidavit was specific and detailed: It said that one Ben Coleman, accompanied by two of his purported nephews as bodyguards, Jesse Patterson and Donald Morgan, delivered heroin to the described premises approximately once a week; and that Jesse Patterson had a reputation—as of affiant's knowledge, we presume—as a "narcotic trafficker." The affidavit named the three individuals who

lived at 613 South Sheridan, one of whom was Ben Coleman, the asserted heroin deliverer. The affidavit, setting forth specifics, said that, according to the informant, the occupants of 613 South Sheridan Street, Spokane, ran out of narcotics as of the morning of October 21, 1970, and expected a shipment to be delivered that night by Donald Morgan—earlier described in the affidavit as a bodyguard of Ben Coleman—in a white Lincoln Continental automobile, and that the informant had pointed out this particular automobile to the federal narcotics officer on the morning of October 22 parked in front of the identical premises, 613 South Sheridan. It stated that the same federal agent had observed these premises at 9:30 p.m. the night before, and there had been no white Lincoln Continental there. On returning later the agent saw the same or one of similar description at 11:30 p.m., October 21, parked in the driveway to the same premises. The affidavit related further specific details supporting probable cause; it said that two named detectives of the Spokane Police Vice Detail had knowledge that the premises at 613 South Sheridan were being frequented by known prostitutes, drug users and narcotic (heroin) users, and specifically named five of them.

There were other details set forth warranting a conclusion of probable cause, too. According to the affidavit, Lieutenant Richard Olberding, of the Spokane Police Narcotics Section, and presumably one of the affiant officer's superiors in the field of investigations for violation of the narcotics law, had informed affiant that a reliable, creditable informant, known to the lieutenant for 16 years, had informed the lieutenant that he had seen known narcotic users enter the named premises at irregular hours during the interval from June 1970, until October 21, 1970, and remain there for a short period of time. And finally, the affidavit said that early in 1970 approximately 280 capsules of heroin had been found in the residence of Ida Ruth Jones, then living on East 6th Avenue, Spokane, presumably the same Ida Ruth Jones now said to be living at 613

South Sheridan Street. This earlier seized heroin, according to the Spokane Police Department's information, had belonged to the earlier mentioned Ben Coleman.

As was said in *Beck v. Ohio,* 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964), it is only the probability of criminal activity and not a prima facie showing of it which represents the standard of probable cause. If the standards of *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965), and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), are applied, and the affidavit before us is interpreted as laid down in those cases in a "commonsense and realistic fashion," we think that the affidavit supported the issuing judge's discretionary finding of a probable cause of criminal activity.

In a search warrant issued under law by a judicial officer, however, there is more than the protective shield of probable cause. The written record surrounding the judicial issuance of a search warrant probably affords greater protection to the individual against abuse of power by the police than does the generalized requirement of reasonableness and probable cause. The warrant itself is a direct command to the peace officers to proceed circumspectly, to make a record of their actions in executing the search and to make a return to the issuing judge. Thus, the police must serve the warrant within the time specified in it, or within a reasonable time of its issuance or within a time specified by law; they must make a report to the court in writing particularly describing the articles seized and describing the place or persons from whom taken.

These requirements of a written record as a basis for the warrant and a written return to the issuing judicial officer showing exactly what actions were done under its authority probably affords the individual and his house, his papers and his effects conceivably as great a protection from unwarranted police intrusion than the minimal standards of reasonableness mentioned in the constitution. For this reason, among others, the courts have consistently, in sit-

ting on search warrant cases, adhered to a policy which encourages peace officers in the discharge of their duties to apply for judicial authority to make a search rather than proceed without the intervention of the courts.

Accordingly, although the constitutions protect the individual and his house, his papers and his effects from unreasonable searches and seizures, they do not prohibit reasonable searches. Whether a search with a warrant is reasonable, therefore, depends upon all of the circumstances shown to have been connected with it and as shown under oath, either in writing or orally, to the judicial officer who issued it. If the supporting evidence made under oath gives the judicial officer good cause, that is, rational grounds to believe that criminal activity or evidence in proof of it existed at the premises to be searched, the warrant on review should be held reasonably issued. The law vests a broad discretion in the judicial officer from whose offices the search warrant is sought, and while he may not apply wholly subjective standards, and the record must show the existence of objective criteria going beyond the personal beliefs and suspicions of the applicants for the warrant, the supporting affidavit or testimony must be viewed in the light of common sense and need not be expressed in formal language, nor meet the procedural and linguistic requirements of judicial pleadings, nor rise to the standards for the admissibility of trial evidence.

We are, therefore, of the opinion that the affidavit submitted to Judge Gordon S. Lower, as Judge of the Spokane County District Court, was constitutionally sufficient to sustain the judge's discretion for finding probable cause.

Reversed with directions to vacate the order to quash the search warrant and suppress the evidence.

FINLEY, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

APPENDIX

IN THE JUSTICE COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY AND DISTRICT OF SPOKANE

STATE OF WASHINGTON,
James R. Albright
Spokane Police Department,
       Plaintiff,

v.

613 South Sheridan St.
Spokane, Washington,
       Defendant.

No. 27756

COMPLAINT FOR SEARCH WARRANT
FOR
NARCOTIC AND DANGEROUS DRUGS

James R. Albright, being first duly sworn on oath, deposes and says: that he is a Police Officer with the Spokane Police Department, having served with said department for the past 15½ years. The affiant further states that at present he is serving as a Detective in the Narcotics Section of the Spokane Police Department, of the city of Spokane, Washington.

The affiant further states that he has been informed by a Federal Narcotics Agent, whom he has known for approximately two (2) years, that he has information from a reliable and creditable informant relative to the Narcotic (Heroin) traffic at 613 South Sheridan St., Spokane, Washington.

This informant has provided information to the Federal Narcotics Agent which is as follows:

That Ben Coleman, a negro male, delivers Heroin to this address approximately once a week and is usually accompanied by two proported Nephews who act as body-guards. They are identified as Jessie Patterson, a negro male, and Donald Morgan, a negro male. Jessie Patterson has a reputation with the Spokane Police Department as a Narcotic trafficker. Individuals residing at 613 South Sheridan are Ida Ruth Jones and Jo Ann Hughes (aka Jo Ann Hughs), and Ben Coleman resides at this residence when in Spokane.

This informant further stated that as of the morning of October 21, 1970 they were out of Narcotics at the above residence and that a shipment of Narcotics was expected in during the evening of October 21, 1970. This informant stated that a Donald Morgan would be bringing the Narcotics in and that he drives a white Lincoln Continental. On the morning of October 22, 1970 the informant pointed out Morgans Continental, which was parked in front of 613 South Sheridan, Spokane, Washington, to the Federal Narcotics Agent. The Federal Narcotics Agent was unable to obtain the license plate numbers of the vehicle at this time. This Federal Agent, at approximately 11:30 p.m., October 21, 1970 observed this vehicle, or one of similar description parked in the driveway of 613 South Sheridan, Spokane, Washington. The Federal Agent had been in the vicinity at 9:30 p.m. October 21, 1970 and this vehicle was not at this residence of 613 South Sheridan, Spokane, Washington at this time.

The affiant further states that Detectives of the Spokane Police Vice Detail, Detectives Gary Johnson and Donald McMath, have knowledge

that 613 South Sheridan, Spokane, Washington, is being frequented by known prostitutes, drug users and Narcotic (Heroin) addicts. They specifically know Louis and Jody Solomon, Gloria Tschoky, Shirly Phillips aka Shirley Chisolm, and O'Neal Chisolm aka Gomez, have frequented this residence at 613 South Sheridan, Spokane, Washington.

WHEREFORE, Your Affiant prays that a search warrant issue for the purpose of searching (describe premises, address, etc. or if vehicle, give make, license number, etc.) 613 South Sheridan Street, Spokane, Washington to seize all narcotic and dangerous drugs there found, pursuant to R.C.W. 10.79.015 to search for and seize any evidence material to the Felony crime of Possession of Dangerous Drugs, Sale, or Distribution thereof of any Dangerous Drugs or Narcotics.

/s/ *James R. Albright*

Subscribed and sworn to before me this 22nd day of October, 1970.

/s/ *Gordon S. Lower*
Justice of the Peace in and for
Spokane County and District,
State of Washington

CONTINUATION OF AFFIANTS STATEMENT.

The affiant further states that these same two (2) Detectives stated that they noticed considerable activity at the residence of 613 South Sheridan, Spokane, Washington at approximately 10:00 p.m. October 21, 1970.

The affiant further states that Lt. Richard Olberding of the Spokane Police Narcotics Section has a reliable creditable informant who he has known for approximately sixteen (16) years. This informant has advised that he has observed known Narcotics users enter the residence of 613 South Sheridan, Spokane, Washington from June 1970 until the present time, at irregular hours and staying for a short period of time.

The affiant further states that early in 1970 approximately 280 capsules of Heroin were found in the residence that Ida Ruth Jones was occupying at the time on East 6th Avenue, Spokane, Washington. This Heroin according to our information was the property of one Ben Coleman.

UTTER, J. (dissenting)—The State of Washington appeals from a superior court order quashing a search warrant and suppressing evidence in a criminal prosecution which charged the two defendants with unlawful possession of narcotics.

Two issues are present in this appeal: (1) whether the affidavit submitted in support of the petition for the search warrant was sufficient to allow a magistrate to independently find probable cause; and (2) if we determine the affidavit insufficient and thereby the search warrant's issuance unlawful, should the exclusionary rule be rejected,

permitting the admission of the seized evidence. I find the affidavit legally insufficient, as did the trial judge, and would, as he did, suppress the evidence.

Our answers to the questions posed by these issues must be governed by the fourth amendment to the United States Constitution and, under the supremacy clause, the United States Supreme Court's interpretation of this amendment.

The fourth amendment, as interpreted by the United States Supreme Court, requires a magistrate, not the police officer, to determine the existence of probable cause to issue a search warrant. Where information from an informant, not present before the judge for examination, forms the basis of the affidavit, then the affidavit must set forth facts enabling the magistrate to independently judge the credibility of the informant and reliability of his or her information. When the affiant relies upon information from an informant to show probable cause, the magistrate can only perform his constitutional duty of determining independently the existence or absence of probable cause, when such facts are present. *Nathanson v. United States*, 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933); *Giordenello v. United States*, 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958); *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *United States v. Ventresca*, 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *Whiteley v. Warden*, 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971); *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

The majority's failure to analyze this question results in its overindulgence with nondispositive general rules regarding the latitude of a magistrate's discretion and the nontechnical character of search warrant affidavits. I agree we should not be overly technical, but the majority's approach "paints with too broad a brush." The magistrate's obligation is to give a commonsense reading to the affidavit, yet "[w]here, as here, the informer's tip is a necessary

element in a finding of probable cause, its proper weight must be determined by a more precise analysis." *Spinelli v. United States, supra* at 415.

The basis of the decisional law concerns the guarantee of the fourth amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no warrants shall issue, but upon probable cause,* supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Italics mine.)

Determining the existence or absence of probable cause in a petition for a search warrant involves two essential stages. First, a set of "facts and circumstances" must be presented to a magistrate under oath or affirmation. *Nathanson v. United States, supra* at 46-47; *Aguilar v. Texas, supra* at 112; *Spinelli v. United States, supra* at 413. Second, the inference drawn from the presented facts must be "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 (1948).

Thus, no magistrate may accept without question the complainant's mere conclusion, but rather must abide by the two requirements announced in *Aguilar,* which together provide the minimum standards for finding probable cause. *State v. Barnes,* 76 Wn.2d 234, 236, 456 P.2d 337 (1969). First, where the affidavit relies on an informant, the magistrate "must be informed of some of the underlying circumstances from which the informant concluded" as he or she did, and second, "some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Aguilar v. Texas, supra* at 114.

Only if the affidavit provides "underlying circumstances" can the magistrate independently find the necessary proba-

ble cause to issue the search warrant. If the affidavit is "purely conclusory," the magistrate may not exercise his duty to find probable cause present. "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *United States v. Ventresca, supra* at 108, 109.

In applying these guidelines to the affidavit before us, I can only agree with the superior court judge who found the affidavit completely insufficient. The affidavit, set out in full in the appendix, recites that a Spokane police officer received information from a federal narcotics agent who had received information from an informant of the agent, who the federal agent alleges is reliable and credible. The remainder of the affidavit essentially recites the information supplied through this chain of information, and presents three additional items in a section titled "Continuation of Affiants Statement."

In considering the information of the federal agent's informant, there is absolutely no offer of facts, let alone the substantial offering required in cases involving hearsay (*Jones v. United States,* 362 U.S. 257, 269, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960)) by which the magistrate could judge independently whether the informant was indeed credible or his or her information indeed reliable. The only language in the affidavit going to either of these critical concerns, is the mere conclusion by the federal agent that the informant was reliable and credible. Furthermore, the affiant himself did not make even a conclusory statement of support for the informant's veracity and the information's reliability. All the affidavit contains in this regard is the federal agent's faith in the information and its source, and there are no underlying circumstances bearing on the reasons for such faith enabling the magistrate to pass independent judgment.

Moreover, there is nothing to indicate that the informant's information was not itself based on information from yet another source. *See Spinelli v. United States, supra* at

416. The affidavit here not only sets forth no facts or allegation that the Spokane officer (affiant) spoke with personal knowledge on the matters recited, it does not even contain allegations that the federal agent or the unidentified source spoke with personal knowledge. *See Aguilar v. Texas, supra* at 113. From what appears in the affidavit, the information recited may be the informant's suspicion, belief, or mere conclusion. Such a chain of hearsay information, possibly not even originating with the anonymous informant, may not validly support a finding of probable cause.

Those portions of the affidavit regarding the *reputation of the residence* to be searched, fail to satisfy the tests announced in *Aguilar,* and in certain instances are mere statements of suspicion. The assertion by the affiant that detectives of the Spokane Vice Detail "have knowledge" of known criminals frequenting the house to be searched is made with nothing to indicate from where the information was obtained by the detail or how the affiant came into possession of it. Moreover, such an assertion, as well as the one alleging detectives in the detail "noticed considerable activity" at the residence, is nothing more than an expression of suspicion. Assertions of police suspicion that alone cannot provide a basis for a magistrate's finding of probable cause, may not "be used to give additional weight to allegations that would otherwise be insufficient." *Spinelli v. United States, supra* at 418-19.

Similarly, the assertion by the affiant that narcotics users entered the house in question from June 1970 till the present can create only suspicion, not probable cause, that narcotics are present. In addition, this information was obtained by the affiant from the Spokane Police Narcotics Section who, in turn, received it from a "reliable creditable informant . . . known for approximately sixteen (16) years" to the section's lieutenant. This information fails to provide a basis for a finding of probable cause for the same reasons the information coming through the federal agent-informer chain is inadequate. There is absolutely no presentation of "underlying circumstances" by which a magis-

trate may independently consider the information provided in determining probable cause. All that is in the affidavit is the conclusory statement by the lieutenant, which is insufficient.

Finally, the statement in the affidavit that in early 1970 heroin capsules were found in a residence at East 6th Avenue simply cannot be considered as relevant for a search of another house at 613 South Sheridan. Nor is the additional statement that the heroin found at East 6th Avenue "according to our information" belonged to Ben Coleman (the suspected deliverer of narcotics to 613 South Sheridan), for there is nothing to indicate to the magistrate from where such information was obtained.

The search warrant issued on such an affidavit cannot be sustained "without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." *Spinelli v. United States, supra* at 419.

The petitioner argues that *United States v. Harris, supra,* requires a different analysis because of its modifying impact on *Aguilar* and *Spinelli.* I cannot agree. In *Harris,* the Supreme Court found the affidavit sufficient. Upon analysis, the plurality opinions are fundamentally a continuation of past Supreme Court analyses of affidavits relying on informants. This opinion was 5-4 on result only. *See* Comment, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 704-708 (1972).

In the reasoning of the plurality opinion by Chief Justice Burger, belief in the informant, when taken with the affiant's personal knowledge of the accused's background, provided a permissible basis for a magistrate to find probable cause and issue a warrant. Another plurality concluded the informant's statements against personal penal interest were the additional sufficient basis for relying upon the tip. In either situation, the facts now before us do not reveal similar circumstances. Neither the affiant Spokane officer, nor the federal agent, had any personal knowledge of de-

fendants Morgan or Patterson; nor did the federal agent's informant make any statements against his penal interest.

The majority opinion, while reciting the proper tests, completely mistakes the ultimate question. It is not, as they state, whether "the judicial officer who issued the search warrant abused his discretionary powers." It is instead whether the affidavit supporting the search warrant, relying as it did upon unidentified, unsupported informants and hearsay, gave the magistrate a basis to *independently* find probable cause. This resolution of the serious question involved totally evades the mandate of *Aguilar* and its progeny and rubber stamps the police request for a warrant without any meaningful independent search for probable cause by the court. There is no case decided by either this court or the United States Supreme Court which takes this approach. The majority concludes as it does despite its own recognition that the "affidavits or complaint must go beyond mere conclusions" and require the presentment of underlying circumstances.

The majority recognizes but fails to resolve the serious questions raised by the use of hearsay (*Jones v. United States, supra*) and informants (*McCray v. Illinois*, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967)) in an affidavit petitioning a search warrant. The magistrate's job of determining the existence of probable cause is made the more difficult, for the matter of police veracity is often raised in the anonymous informant situation. *See* Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L.J. 1091 (1951) and Grano, *A Dilemma for Defense Counsel: Spinelli-Harris Search Warrants and the Possibility of Police Perjury*, U. Ill. L.F. 405 (1971). "Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects." *Jones v. United States, supra*, Douglas, J., dissenting at 273.

Since I find the issuance of the search warrant improper because it was based on an affidavit that does not permit a

magistrate to find probable cause, I turn to petitioner's contention that we repudiate the exclusionary rule.

The federal courts, since 1886, have had the exclusionary rule (*Boyd v. United States,* 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524 (1886)), but the states have not been required to also adhere to the rule until 1964. *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1964). Washington has also adhered to the exclusionary rule. *State v. Gibbons,* 118 Wash. 171, 203 P. 390 (1922); *State v. O'Bremski,* 70 Wn.2d 425, 428, 423 P.2d 530 (1967).

I would affirm the decision of the superior court to quash the warrant and suppress the evidence.

ROSELLINI and STAFFORD, JJ., concur with UTTER, J.

Petition for rehearing denied February 13, 1974.