[No. 12301-7-I.   Division One.   March 26, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL LEONARD ANDERSON, *Appellant*.

*Raymond H. Thoenig* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Patrick Schneider, Deputy*, for respondent.

CALLOW, J.—Carl Leonard Anderson appeals the order of the King County Superior Court, Juvenile Division, adjudging him guilty of second degree burglary. He assigns as trial court error the denial of his motion to suppress and the imposition of the statutory penalty assessment of RCW 7.68.035.

The issues presented are:

1. Whether the issuance of a search warrant was based on a legally insufficient affidavit.

2. Whether the statutory penalty assessment under RCW 7.68.035 is applicable to juvenile offense dispositions.

The West Valley Union Service Station located at 18060 West Valley Highway in Kent, Washington, was burglarized in the early morning hours of April 29, 1982. That same day, a police officer sought and received a search warrant for the residence located at 7203 S. 180th, Kent, Washington. The warrant was issued by the Aukeen District Court based on the officer's affidavit. Several items of the stolen property were subsequently discovered in said residence. On May 20, 1982, Carl Leonard Anderson, the appellant, was charged by information with second degree burglary, RCW 9A.52.030, filed in King County Superior Court, Juvenile Division.

Prior to the fact–finding hearing, appellant moved for and was denied a motion to suppress the fruits of the search conducted on April 29, 1982. Appellant was then found guilty as charged following trial to the court based on a stipulated record. On September 8, 1982, appellant was

sentenced to 20 days' confinement, 9 months' community supervision and 20 hours of community service. He was further ordered to pay a penalty assessment of $50 and to pay restitution to the victim in the amount of $346.49. He appeals.

The first issue is whether the issuance of a search warrant was based on a legally insufficient affidavit.

The District Court issued a warrant authorizing the search of the residence located at 7203 S. 180th, Kent, Washington, due to its finding that probable cause existed to believe that evidence of a burglary was concealed therein. This finding was based solely on the police officer's affidavit for search warrant which stated:

> That evidence of the crime of Burglary II is believed to be located in or about the following described place or premises: 7203 S. 180th, Kent, Wa. 98031. This is a White 2 Story Single Family Dwelling Located on the South East Corner of S. 180th And 72nd S. There Are 2 Out Buildings on the South Side of the Dwelling.
>
> That this request for Search Warrant is based on the following: A Forced Commercial Burglary occurred to the West Valley–Union Self Service Station Located At 18060 W. Valley Hwy., Kent, WA 98031. This Burglary occurred Between 2300 Hrs and 0545 Hrs, April 28–29, 1982.
>
> Stolen Were Primarley [sic] Marboro [sic], Winston and Camel Cigarettes As Well As Candy And Soda Pop. The Stolen Cigarettes Were of The Type Smoked By Residents of The Above Described Residence. They Are Customers of The Victimized Service Station. Many Other Brands of Cigarettes Were Not Taken.
>
> The Manager of The Victimized Station Found By Checking With His Nighttime Employee That There Was A Party The Prior Night At The Above Described Residence. I Went To Check At The House To Determine If They Saw or Heard Anything. With Loud Knocking, Approximately 0800 Hrs, April 29th, 1982, I Could Not Gain A Responce [sic] From Any Occupants of The House, There Was A Car In The Driveway.
>
> Located on The Property, Outside, By One of The Out Buildings I Saw A White, Older Style, Refrigerator. The [door] Was Facing Outward, The Area Is Insecure And

Accessable [*sic*] To Children. I Checked The Refrigerator Door To Determine If The Lock Had Been Rendered Inoperable. It Had Not, When the Door Opened, I Saw 2 Full Cases of Soda Pop Such As Had Been Stolen From the Union Service Station.

An affidavit legally sufficient to justify the issuance of a search warrant must contain underlying facts and circumstances to establish probable cause. Mere suspicion, belief, and guess are not enough. *State v. Patterson,* 83 Wn.2d 49, 53, 515 P.2d 496 (1973). "[P]robable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a man of ordinary caution to believe the accused is guilty of the indicated crime." *State v. Seagull,* 95 Wn.2d 898, 906, 632 P.2d 44 (1981). However,

> [i]n determining whether probable cause exists to issue a search warrant, the magistrate must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).

*State v. Kuberka,* 35 Wn. App. 909, 912–13, 671 P.2d 260 (1983). "It is only the probability of criminal activity and not a prima facie showing of it which governs the standard of probable cause." *Seagull,* at 907.

Moreover, although the issuing judge has "the duty to ascertain whether the warrant sought is being reasonably requested and on reasonable grounds", *Patterson,* at 53, the issuance of a search warrant is a matter of judicial discretion, and "should be given great deference by reviewing courts." *Seagull,* at 907; *see State v. Patterson, supra.*

> "[I]f in the considered judgment of the judicial officer there has been made an adequate showing under oath of circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that

evidence thereof will be found in the premises to be searched, the warrant should be held good."

*Seagull,* at 907 (quoting *Patterson,* at 58).

Here, the affidavit did not make an adequate showing that went beyond suspicion and mere personal belief that evidence of the burglary would be found in the searched residence. The only facts in the affidavit which connected the residence searched to the burglarized service station were: (1) that the residents of the searched premises were customers of the service station and smoked cigarettes of the type stolen in the burglary; and (2) that the police officer observed "2 full cases of soda pop such as had been stolen from the . . . service station" in an outward–facing refrigerator located outside by one of the outbuildings on the south side of the residence. These circumstances could have applied to any number of people and were insufficient, without more, to provide a link amounting to probable cause between the burglary and the defendant.

It is true that "[t]he policeman's affidavit should not be judged as an entry in an essay contest nor subjected to microscopic examination", *Patterson,* at 55; *see Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), but rather interpreted in a commonsense and realistic fashion. *United States v. Ventresca,* 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965). However, these facts do little more than raise a mere suspicion that evidence of the burglary may have been concealed in the residence. Any customer of the burglarized store with goods in his possession like that stolen from the store would have been subject to a search of his home under the theory advanced by the prosecution. The affidavit did not establish that there was a fair probability that evidence of the burglary would be found in the residence.

Hence, no "substantial basis" existed for concluding that probable cause existed. The search warrant was improperly issued and the fruits of such search should have been suppressed. "Evidence obtained either directly or indirectly from an unlawful search is subject to the exclusionary

rule." *State v. Childress,* 35 Wn. App. 314, 316, 666 P.2d 941 (1983); *see Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The second issue presented is whether the statutory penalty assessment under RCW 7.68.035 is applicable to juvenile offense dispositions.

■ *State v. Sargent,* 36 Wn. App. 463, 674 P.2d 1268 (1984) recently held that RCW 7.68.035 applies "unequivocally and mandatorily" to juvenile offense dispositions. In this case the trial court entered an order of disposition requiring appellant, *inter alia,* to pay a penalty assessment of $50.

At the time of the proceeding below, RCW 7.68.035 stated, in part:

> (1) Whenever any person is found guilty in any court of competent jurisdiction of having committed a crime, except as provided in subsection (2) of this section, there shall be imposed by the court upon such convicted person a penalty assessment of fifty dollars for a felony or gross misdemeanor and twenty–five dollars for a misdemeanor. The assessment shall be in addition to any other penalty or fine imposed by law.
>
> . . .
>
> (7) Penalty assessments under this section shall also be imposed in juvenile offense dispositions under Title 13 RCW.

Appellant first contends that RCW 7.68.035(7) is contrary to RCW 13.04.450 which states, "[t]he provisions of chapters 13.04 and 13.40 RCW . . . shall be the exclusive authority for the adjudication and disposition of juvenile offenders *except where otherwise expressly provided.*" (Italics ours.) *State v. Rice,* 98 Wn.2d 384, 395, 655 P.2d 1145 (1982) held that this language precluded the application of RCW 9A.20.020 to juvenile dispositions outside the standard range because RCW 13.04 and 13.40 did not expressly provide for such applicability. In *Rice,* however, both statutes were silent as to their applicability to each other in dispositions beyond the standard range. Conversely, RCW 7.68.035(7) has "expressly provided" that it

shall be applied to juvenile dispositions. This language is clear and unambiguous and does not permit construction or interpretation of its terms. *See State v. McIntyre,* 92 Wn.2d 620, 600 P.2d 1009 (1979).

Appellant also contends RCW 7.68.035 is inapplicable because it may only be imposed upon a person found guilty of having committed a "crime." A delinquent juvenile cannot be deemed to have been convicted of a "crime." RCW 13.04.240; *see In re Frederick,* 93 Wn.2d 28, 30, 604 P.2d 953 (1980). RCW 7.68.035(7), however, applies to "juvenile offense dispositions under Title 13 RCW" and not to "crimes." The penalty applies without ambiguity.

Appellant further contends that the application of RCW 7.68.035 will "destroy the flexibility the Legislature built into the [juvenile] system to allow the court, in appropriate cases, to fit the disposition to the offender, rather than to the offense." *State v. Rice, supra* at 397; *see* RCW 13.40-.160, .190. However, the clear language of RCW 7.68.035 coupled with its enactment 5 years after the enactment of RCW 13.40, indicates that the Legislature intended the penalty assessment to apply to juvenile offense dispositions.

An examination of a subsequent amendment to RCW 7.68.035(7) indicates that the Legislature originally intended the imposition of the penalty assessment to be mandatory. RCW 7.68.035(7) presently states:

> (7) Penalty assessments under this section shall also be imposed in juvenile offense dispositions under Title 13 RCW. *Upon motion of a party and a showing of good cause, the court may modify the penalty assessment in the disposition of juvenile offenses under Title 13 RCW.*

(Italics ours.) Laws of 1983, ch. 239, § 1, p. 1252. "When a material change in a statute is made, a change in legislative intent is presumed." *Benson v. Roberts,* 35 Wn. App. 362, 364, 666 P.2d 947 (1983). Since the 1983 amendment modified RCW 7.68.035(7) to give the trial court discretion in the imposition of the penalty assessment, it must be presumed that the original enactment was mandatory.

The trial court did not err in its imposition of the penalty assessment under RCW 7.68.035. *See State v. Sargent, supra.*

The judgment of the trial court is reversed and the cause is remanded for a new trial with instructions to the trial court to suppress the evidence obtained as the result of the search warrant issued upon the insufficient affidavit.

CORBETT, A.C.J., and SCHOLFIELD, J., concur.