[No. 14133–3–I. Division One. May 28, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN DANFORTH RANGITSCH, *Appellant*.

*Kevin Rangitsch*, pro se, *Browne, Ressler & Foster*, and *Allen M. Ressler*, for appellant.

*Seth Dawson, Prosecuting Attorney*, and *S. Aaron Fine, Deputy*, for respondent.

CORBETT, C.J.—Kevin Rangitsch appeals his judgment and sentence for five counts of negligent homicide and one count of possession of a controlled substance. We affirm the negligent homicide convictions and reverse the controlled substance conviction.

On April 17, 1983, a 3–car collision at an intersection in Lynnwood caused the death of five people. There was testi-

mony at the trial that the defendant was driving northbound in a Camaro, applied his brakes some 26 feet ahead of a stop sign, and slid 41 feet before he collided with an eastbound vehicle which was sent spinning into a westbound vehicle, thereby causing the deaths. Expert testimony on behalf of the State set the defendant's speed at 42 m.p.h. at the time he applied his brakes. The speed limit on the northbound road was 25 m.p.h.

Trooper Lewis found the defendant at a nearby home and observed that he was shaking, mumbling, and sniffling but did not seem under the influence of alcohol. Lewis was told that the defendant had recently undergone back surgery. This information made her suspicious that he was under the influence of drugs, because potent pain–killers often are prescribed for back injury. Lewis was directed by Trooper Walser, who was in charge of the accident investigation, to arrest the defendant and take him to the hospital to get a blood sample. Lewis had been with the State Patrol for 4 years and had received training in recognition of drug use symptoms. On the way to the hospital and once there, Lewis observed that the defendant's moods varied. At times he was detached and unresponsive, and minutes later he would be hyperactive and agitated. She also noticed that his pupils remained dilated even in the bright lights of the hospital. Although she had not previously seen persons under the influence of cocaine, she had experience in recognizing shock symptoms exhibited by accident victims. Based on her experience, training, and observations of the defendant's appearance and moods, she believed that he was under the influence of drugs.

In the waiting room of the hospital, Lewis arrested the defendant and advised him of his *Miranda* rights. He signed the advice of rights form without help. His wife was present and signed the form as a witness. Lewis also read him the special evidence warning pertaining to negligent homicide, including the caution that if he refused to have a blood sample taken his blood would be forcibly taken. Defendant acknowledged that he understood his rights.

Both he and his wife signed the form. When he was asked if he would give the blood sample, he said that he would do so and signed the form granting permission for the blood to be taken. Minutes after the blood was taken, Lewis asked the defendant if he would give a urine sample, telling him that he did not have to do so. She explained that if he refused, a search warrant would have to be obtained. Defendant gave the urine sample. After both samples were taken, Lewis noticed numerous needle track marks on the defendant's arms characteristic of those found on persons who habitually inject drugs. Defendant was released and returned home that night.

Five days after the collision, Walser executed an affidavit for a warrant to search the defendant's home and automobile. He related in the affidavit what Lewis had observed concerning the defendant's possible use of drugs. He also related the statement of a Kimberly White who was with the defendant in a nearby house about 15 minutes before the collision. She said the defendant stated in her presence that he had shot up cocaine one–half hour or so before and needed another fix. In her opinion, the defendant was high at that time. She previously had seen people under the influence of cocaine, and the defendant was the worst she had ever seen. She saw him leave the house in his Camaro, spinning his tires as he drove off at a high rate of speed. She followed in her vehicle and observed him proceed north at a speed she estimated to be greater than 60 m.p.h. Walser further stated in the affidavit that it was the experience of another trooper working in the narcotics department that cocaine users would commonly have cocaine and drug paraphernalia in their vehicles and residences.

On the basis of this affidavit, a search warrant was issued for the defendant's home and automobile. In the search of the home, drug paraphernalia and traces of cocaine were found. This was the basis for count 6 of the information, charging the defendant with a violation of RCW 69.50-.401(d), the Uniform Controlled Substances Act (VUCSA).

Because of the multiple deaths, the collision received

wide coverage by the media, including coverage of allegations that the defendant was a cocaine addict. His previous reckless driving charges were also given extensive publicity when they came to trial in district court while his trial for negligent homicide was pending. Defendant moved for a change of venue, alleging that the extensive publicity prevented him from receiving a fair trial in Snohomish County. The court denied his motion.

Prior to trial, the defendant moved to sever the controlled substances count from the five counts of negligent homicide and to suppress evidence. The court granted the motion to sever and denied the motions to suppress.

The VUCSA charge was tried to the court on stipulated evidence, and the negligent homicide charges were presented to a jury on the alternative bases that the defendant was driving: (a) under the influence of or affected by cocaine, or (b) in a reckless manner, or (c) with disregard for the safety of others. During trial, the defense objected strongly to the testimony of Dr. Bonnell, a pathologist called by the State as an expert witness on the effects of cocaine and on how it might affect motor skills.

The jury found the defendant guilty on all five counts of negligent homicide, and the court entered findings of fact and conclusions of law finding the defendant guilty of the VUCSA charge.

ISSUE 1:

Was there probable cause to believe the defendant was under the influence of drugs so as to justify the taking of blood?

Defendant argues that when Walser directed the arrest be made, he had no knowledge of the defendant's intoxication, and therefore probable cause did not exist to require a blood sample.

A sample of a defendant's blood may be seized without a warrant at the direction of a police officer who has probable cause to believe the defendant was driving while intoxicated and committed the crime of negligent homicide. RCW 46.20.308(1); *State v. Judge,* 100 Wn.2d 706, 712, 675 P.2d

219 (1984).

■ Although probable cause might not have existed for Walser to require a blood sample, there was probable cause to arrest for negligent homicide. There was evidence from which Walser could have concluded that the defendant was operating the vehicle in a reckless manner with disregard for the safety of others which proximately caused the deaths. RCW 46.61.520. The arrest was therefore valid. The request for a blood sample was not made until Lewis had reached the conclusion that the defendant was under the influence of drugs.

The testimony concerning Walser's training, experience, and observations at the scene of the accident supports the finding and conclusion that there was probable cause to arrest the defendant for negligent homicide. The testimony concerning the training, experience, and observations of Trooper Lewis supports the finding and conclusion that there was probable cause to believe the defendant was under the influence of drugs at the time of the collision.[1]

ISSUE 2:

Was there consent to the taking of urine?

Defendant alleges that he was confused by the advice of rights and obligation to give blood, and therefore did not truly consent to the taking of a urine sample.

■ There was substantial evidence from which the trial court did find and conclude that the defendant voluntarily consented to give a urine sample. The voluntary nature of such consent is a question of fact to be determined by considering the totality of the circumstances, including: (1) whether the *Miranda* warnings were given; (2) the defendant's education and intelligence; and (3) whether he was advised of his right not to consent. *State v. Shoemaker*, 85 Wn.2d 207, 212, 533 P.2d 123 (1975); *State v. Rodriguez*, 32 Wn. App. 758, 762, 650 P.2d 225 (1982). In this regard, the findings of the trial court will be given great weight. *State*

---

[1]These are the findings of fact and conclusions of law entered when the trial court denied the defendant's motion to suppress evidence.

*v. Smith,* 72 Wn.2d 479, 481, 434 P.2d 5 (1967). We do not find the defendant's claim of confusion to be supported by other evidence in the record.

The court did not err by refusing to suppress evidence of cocaine in the blood and urine samples. The court was correct in finding probable cause and consent.

ISSUE 3:

Was the defendant entitled to an instruction that evidence relating to drug use be disregarded?

Defendant argues that there was no evidence to establish a nexus between cocaine use and the accident, and therefore evidence of such drug use was inflammatory and irrelevant.

The jury was instructed that driving under the influence of drugs was an alternate means of committing the crime. Two other means are set out in the statute, RCW 46.61.520,[2] and the jury was appropriately instructed concerning all three. Since the statute describes a single offense and since the alternative means of committing it are not repugnant to each other, the jury was also properly instructed that unanimity on any particular means was not required. *State v. Orsborn,* 28 Wn. App. 111, 116–17, 626 P.2d 980 (1980); *see State v. Johnson,* 100 Wn.2d 607, 626, 674 P.2d 145 (1983). But there must be substantial evidence to support each of the means charged. *State v. Franco,* 96 Wn.2d 816, 823, 639 P.2d 1320 (1982). Therefore, evidence of recent drug use would be relevant to the issue of whether the defendant was under the influence of a drug at the time of the negligent homicide. RCW 46.61-.520(1).

Defendant contends that the only evidence relating to

---

[2]RCW 46.61.520 at the time of the accident provided in part:

"Negligent homicide by motor vehicle—Penalty. (1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle."

the effect of cocaine on his driving was the inadmissible testimony of Dr. Bonnell. However, the State relied only in part on Dr. Bonnell's testimony to prove that use of cocaine would have an adverse effect upon the ability of the defendant to operate a motor vehicle. There was also ample circumstantial evidence of that effect by the testimony of other witnesses. At trial, Kimberly White repeated the defendant's statement about his recent drug use made shortly before the collision and related her observations of its apparent effect on the defendant and his driving immediately before the collision. Lewis also testified to the defendant's motor and mental responses shortly after the collision. The testimony of these witnesses was sufficient to make the effect of drug use a jury question whether or not Dr. Bonnell's testimony was admissible. *See State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984).

█ Additionally, we find that the court did not abuse its discretion in admitting the testimony of Dr. Bonnell over the defendant's objections. ER 702[3] states that an expert witness may qualify as an expert by virtue of knowledge, skill, experience, training, or education.

> [T]he modern trend in the law of evidence . . . is away from reliance on formal titles or degrees.
>> The witness need not possess the academic credentials of an expert; practical experience may suffice. Training in a related field or academic background alone may also be sufficient.

(Citation omitted.) *Harris v. Robert C. Groth, M.D., Inc., P.S.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983) (quoting 5A K. Tegland, Wash. Prac., *Evidence* § 289 (2d ed. 1982)). "'[T]he line between chemistry, biology, and medicine is too indefinite to admit of a practicable separation of topics and witnesses'." *Harris v. Robert C. Groth, M.D., Inc., P.S.*,

---

[3]ER 702 states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

*supra* at 450 (quoting 2 J. Wigmore, *Evidence* § 569, at 790 (rev. 1979)). A fortiori, in various fields of medicine, a physician is not incompetent to testify as an expert merely because he is not a specialist in the particular field of which he speaks. "[D]octors with unlimited licenses are competent to give expert testimony in the entire medical field." *Kelly v. Carroll*, 36 Wn.2d 482, 491, 219 P.2d 79, 19 A.L.R.2d 1174, *cert. denied*, 340 U.S. 892 (1950). For example, an internist may testify about the physical effects of electroshock therapy, even though he is not a specialist in psychiatry or neurology. *Kosberg v. Washington Hosp. Ctr., Inc.*, 394 F.2d 947, 949 (D.C. Cir. 1968). Finally, in determining whether an expert is qualified, trial courts retain broad discretion and will be reversed only for manifest abuse. *Harris v. Robert C. Groth, M.D., Inc., P.S., supra* at 450. Therefore, doubts as to Dr. Bonnell's training and qualification will affect the weight rather than the admissibility of his testimony. *In re Young*, 24 Wn. App. 392, 397, 600 P.2d 1312 (1979).

Although Dr. Bonnell is not a pharmacologist, he was a competent witness. From the evidence, the court was able to determine that he is a physician specializing in forensic pathology. His medical training included instruction on drugs and their effects on the body. He followed a 6–month course in pharmacology during the second year of medical school and a clinical course in the same field during his third and fourth years in medical school. As assistant medical examiner for King County, he had conducted autopsies on some 30 people who had died as a result of using cocaine or whose systems contained cocaine. Although his main interest is how and why cocaine use can be fatal, he has, since his graduation from medical school, done some reading on the effects of cocaine on human behavior, and in preparation for the trial, he had done special reading which concentrated on the pharmacological aspect of cocaine use. The court did not err in permitting Dr. Bonnell to testify as an expert.

Defendant also assigns error to the court's decision to

permit Dr. Bonnell to read to the jury from certain texts. A witness permitted by the court to testify as an expert may rely on statements contained in treatises, periodicals, and pamphlets. These statements are not excluded by the hearsay rule, and they may be read into evidence provided the expert has testified to their reliable authority. ER 803(18).[4] Dr. Bonnell relied on several statements in articles and in a monograph describing the effects of cocaine on human behavior and perception, having first testified to their reliability as authority, thus qualifying the textual statements under ER 803(18).

The court did not err in refusing to instruct that evidence of drug use be disregarded.

ISSUE 4:

Was there probable cause to search the defendant's home?

 Defendant contends that the affidavit in support of the search warrant fails to meet the requirements of probable cause. The affidavit in support of the search warrant must adequately show circumstances which go beyond suspicion and mere personal belief that evidence of a crime will be found on the premises to be searched. *See State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981); *State v. Anderson,* 37 Wn. App. 157, 160, 678 P.2d 1310 (1984). In the affidavit, the officer's belief that habitual users of drugs keep drugs and paraphernalia in their home was mere speculation. It was not sufficient to establish probable cause. The trial court therefore erred by refusing to suppress evidence found as a result of the search warrant. It appears that there was no other evidence available to prove

---

[4]ER 803(18) provides:

"*Learned Treatises.* To the extent called to the attention of an expert witness upon cross examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

count 6 of the information. The judgment and sentence for the VUCSA charge should be reversed and the count dismissed.

ISSUE 5:

Was the defendant entitled to a change of venue because of pretrial publicity?

In his pro se brief, the defendant contends that the court erred in denying his motion for change of venue.

■ The trial court gave careful consideration to the motion for change of venue and considered the factors set out in *State v. Jamison,* 25 Wn. App. 68, 70, 604 P.2d 1017 (1979), *aff'd,* 94 Wn.2d 663, 619 P.2d 352 (1980).

A criminal defendant is entitled to a change of venue on the basis of pretrial publicity only upon a demonstration that such publicity has resulted in actual prejudice or in a reasonable probability of prejudice to his right to a fair and impartial trial. Determination of the existence of such prejudice is within the trial court's discretion.

*State v. Jamison, supra* at 71. We cannot find from the record before us that the publicity was so extensive that the defendant suffered actual or probable prejudice. The trial court did not abuse its discretion in refusing to grant the motion for change of venue.

ISSUE 6:

Was there sufficient evidence that the defendant's automobile caused the five deaths?

In his pro se brief, the defendant contends that the excessive speed of the westbound driver caused the fatalities. He further argues that the intersection itself was unsafe.

■ In determining whether there was sufficient evidence to support the finding that the defendant's automobile caused the deaths, we look at the evidence most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the charge beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). We find this to be the case here. There was ample evidence from which the jury could find that it

was the defendant's automobile which caused the five fatalities.

ISSUE 7:

Should a witness who has violated a court order to remain outside the courtroom be permitted to testify?

In his pro se brief, the defendant contends that the wife of the westbound driver should not have been allowed to testify after listening to her husband's testimony despite a court order excluding witnesses. He alleges that the court erred in denying the defendant's motion to prohibit her testimony.

If a witness violates the instructions of the court not to sit through other testimony, it is within the sound discretion of the trial court whether or not to grant the motion to prohibit that witness from testifying. 13 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 3808, at 360–61 (1984); *State v. Grant,* 77 Wn.2d 47, 51, 459 P.2d 639 (1969); *State v. Dixon,* 37 Wn. App. 867, 877, 684 P.2d 725 (1984). The record does not show an abuse of discretion by the trial court.

Affirmed as to the five counts of negligent homicide. Reversed as to count 6, charging violation of the Uniform Controlled Substances Act, and remanded for dismissal of count 6.

WILLIAMS and SCHOLFIELD, JJ., concur.