IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39889-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL LEE SUMMA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Michael Summa appeals his convictions for unlawful possession of a firearm and possession of a controlled substance with intent to distribute. He also appeals his sentence. Because sufficient evidence shows constructive possession of the contraband, we affirm the two convictions. Because the sentencing court employed an inaccurate offender score, we remand for resentencing.

FACTS

This appeal concerns law enforcement officers on patrol seeing Michael Summa fleeing from their presence and the discovery of contraband in the vehicle from which Summa fled. On April 15, 2022, at 1:15 a.m., Spokane Officers William Braten and Zack Johnson, in a marked patrol car, traversed a residential alleyway. A nearby property owner's video camera captured most of what transpired next. The two officers saw a black Chevrolet Cobalt parked next to a garage. Two men respectively stood on

opposite sides of the vehicle. One of the men fled into the night's darkness. The officers had yet to activate the patrol car's emergency lights or spotlights. The officers saw the fleeing individual for five seconds before he disappeared.

The neighboring property's security camera recorded Michael Summa reaching into and rummaging inside the Cobalt, including the spot where the officers later found a firearm holster, before Sidney Gleave approached him from behind. Gleave placed clothing on the hood of the car, but did not enter the vehicle. The footage also captured Summa reaching into the front driver's side compartment as the officers' patrol vehicle arrived. Moments later, Summa sprinted from the vehicle.

The law enforcement officers, now suspicious, parked and exited from the patrol car. Officer Zach Johnson believed "criminal activity might be afoot." Report of Proceedings (RP) at 265. The officers, while using flashlights to look inside the vehicle, saw a firearm holster and a .45 caliber handgun cartridge near the driver's side door. Officer Johnson viewed electronic devices near the car's center console.

Officer Zach Johnson messaged an all-points bulletin, in which Johnson described the individual who fled as a "heavy set, white male with a chin strap beard, generally a beard running under here with no upper lip facial hair." RP at 265. Officer William Braten similarly described "the dude that ran off" as "short and kind of chunky." Exhibit (Ex.) D-101 at 33. In response to the bulletin, an unidentified officer remarked that the description resembled Michael Summa. Officers Johnson and Braten reviewed an image

2

of Summa on Braten's laptop.  Officer Johnson noted that the photograph was an older

photo but appeared to match Summa.  Officer Braten later commented, "I can't 100

percent confirm, but, yeah, I think we had the same little chin strap beard going on."  Ex.

D-101 at 34.  Summa faced an outstanding arrest warrant by the Department of

Corrections for violating his conditions of release after a homicide offense.  He had six

earlier felony convictions, including convictions for drive-by shooting, manslaughter, and

assault.  Summa was prohibited from owning or possessing firearms.

The man, who remained standing next to the Cobalt's passenger side, later

identified as Sidney Gleave, explained his presence by declaring he wished to purchase

the Chevrolet Cobalt from a friend.  Gleave had been released from prison four days

earlier, and a court order also prohibited him from possessing firearms.  Officer William

Braten asked Gleave, "Who's all running around inside the house?"  Ex. D-101 at 2.

Gleave replied, "No one," and "Just his family," clarifying that "his family" referred to

the person who had fled.  Ex. D-101 at 2-3.  Officer Johnson then asked,

> So, Sidney, what do you know about this car?  There's a holster in
> there and your home boy [sic] goes taking off as soon as we see you.  You
> stuck around which makes me think you're not really involved with this,
> but I don't want to wrap you up in it if it's his deal, right?

Ex. D-101 at 14.

Officer Matthew Stewart arrived in the alleyway.  Stewart told Sidney Gleave that

Gleave could leave but that the officers intended to apply for a search warrant for the

3

vehicle because "we see a holster and bullets, okay? What goes with holsters and bullets?" Ex. D-101 at 20. Gleave demanded that the officers return his belongings, which lay on the passenger seat, before seizing the Cobalt. The officers responded that, if Gleave convinced his fleeing friend to return and grant permission to search the car, law enforcement would not seize the car. Gleave replied that he lacked knowledge as to where the friend fled and he did not know where or how to contact him.

The law enforcement officers towed the Chevrolet Cobalt from the alley. An hour later, according to the surveillance footage, Michael Summa reappeared and entered a small pickup truck, driven by another. The truck journeyed elsewhere.

Law enforcement officers procured a search warrant based on an affidavit from Officer William Braten. The affidavit declared:

> Your affiant, Officer William E. Braten is a fully commissioned Police Officer employed by the Spokane Police Department since 2021. . . .
> Crime being investigated:
> RCW 9.41.040: Unlawful Possession of Firearm 1st Degree
> Circumstances supporting probable cause:
> Officer W Braten can attest to the following:
> I am a commissioned police officer in the State of Washington and I am employed by the City of Spokane Police Department in that capacity[.]
> I was working uniformed patrol on 04/15/2022 wearing a uniform bearing two patches and a badge identifying me as a Spokane Police Officer.
> I was driving a marked police vehicle with overhead emergency lights and "Spokane Police" emblazoned on the side.
> I was in the alley behind 1619 E Bridgeport Ave when I drove past a black Chevrolet Cobalt with two individuals standing at either side of the vehicle. The doors of this vehicle were open.
> The individual on the driver side of the vehicle immediately took off

4

running in the opposite direction of my patrol car. This implied to me that this individual may be committing a criminal act and did not want to be caught by Law Enforcement as flight at the mere presence of police is very abnormal behavior.

The individual that took off running was later identified as Michael L. Summa. Another officer advised me that he was known to be in the area and I matched his likeness with his most recent booking photo.

Michael L. Summa has a Department of Corrections Warrant for Homicide, is a convicted felon and is noted in local history as being an armed career criminal.

Dispatch ran a iii (criminal history check) on him showing 6 felony convictions to include Drive by shooting, Manslaughter 1st, and Assault 2nd.

The second individual next to the car that did not run was Sidney J[.] Gleave[.]

Gleave stated that the car belongs to his friend that ran off and Gleave was here to buy it.

While looking thru [sic] the windows of the vehicle, I was able to see a firearm holster and handgun ammunition (a single cartridge that appeared to be .45 caliber).

The holster is inside a box of miscellaneous items in the back seat and is positioned for the driver to easily draw a handgun out of it while in the driver seat[.]

The handgun ammunition was in the handrail of the rear left side passenger door.

I was able to see a black cell phone charging in the center console of the vehicle. It appeared to have been abandoned by Summa when he fled the scene.

Summa's behavior (flight away from the vehicle), past criminal history, and items visible inside the car, would lead a prudent and reasonable officer to believe that there may be a firearm inside the vehicle.

I seized the Chevrolet for a search warrant, as I know Summa to be a convicted felon and is not allowed to own a firearm[.]

The Chevrolet was then towed to the Spokane Property Facility where it was placed in a locked garage bay and sealed with evidence tape.

WHEREFORE, declarant requests that a Search Warrant be issued for the purpose of searching (X) VEHICLE(S), upon or in the vehicle described as follows: A black 2010 Chevrolet Cobalt, WA-BXS6147, VIN: 1G1AFSF55A7219394.

Clerk's Papers at 54-56.

After procuring the search warrant, the officers searched the Chevrolet Cobalt. They seized a black handbag on the passenger seat containing a hand grenade, a handgun, a magazine with ammunition, 801 blue fentanyl pills, and $1,161 in cash. A black plastic container labeled "Summa" with a purple marker lay next to the handbag. The center console held an electronic device containing three photos of Michael Summa and a female companion. In the backseat, officers found the holster they previously saw. Officer William Braten noticed that the holster lay on a box in a manner that would allow the driver to reach it.

The Spokane Police Department sent the contents of the black bag and other seized property to the Washington State Patrol crime laboratory. Test results confirmed the drugs from inside the bag to be fentanyl. A Cellebrite extraction from a seized electronic device revealed pictures of Summa and a female. No forensic evidence linked Summa to the black bag, its contents, or the vehicle.

PROCEDURE

The State of Washington charged Michael Summa with first-degree unlawful possession of a firearm (Count I), possession of a controlled substance with intent to deliver (Count II), and possession of an explosive device (Count III).

The city of Spokane brought a forfeiture lawsuit to retain the money captured from

the Chevrolet Cobalt. Michael Summa voluntarily testified under oath at the forfeiture

hearing. Officer Zach Johnson attended the hearing. Johnson heard Summa testify that

he regularly carried firearms for protection. Summa added:

> I got shot in the back of my head and in my back in 2016. And I
> (unintelligible) a prison. There's a buncha [sic] people that don't like me.
> Of course, I carry a gun.

RP at 330.

Michael Summa filed a motion to suppress the contents of the Cobalt. The motion

relied, in part, on the affidavit of William Braten. Summa argued that the affidavit did

not support probable cause to initiate the search. Summa further contended that an

individual fleeing the scene, even with prior criminal convictions, does not establish

probable cause.

The trial court denied Michael Summa's motion to suppress. The superior court

concluded that Officer William Braten's affidavit alone did not support cause to search

the Chevrolet Cobalt since Braten did not observe who fled the scene. Officer Braten's

observations of a firearm holster and ammunition, when combined with Summa's

criminal history, established probable cause for unlawful possession of a firearm. We

note, however, that the affidavit mentioned Summa being a convicted felon.

At trial, the State presented testimony from Officers William Braten and Zach

Johnson. The State played the security footage of the alleyway. Officer Johnson testified

that, at least one individual occupied the Cobalt when the officers drove past, but the

darkness prevented him from assessing the number of occupants or identifying the driver.

Officer Zach Johnson averred that the Chevrolet Cobalt lacked a registered owner. Officer Johnson testified someone reported the Cobalt as stolen. Law enforcement officers saw the Cobalt on multiple occasions, each time with a different driver.

At the close of the State's presentation, Michael Summa moved to dismiss the charges. He argued that the State had failed to prove he possessed any of the contraband. He emphasized that Sidney Gleave remained next to the Chevrolet Cobalt, stood near the location where the officers found the black bag, and admitted to possessing belongings in the vehicle. The court denied the motion to dismiss. The court highlighted that law enforcement found in the car a box labeled with Summa's name thereon such that the State presented a jury question of whether Summa constructively possessed the firearm and controlled substances.

In closing arguments, the State argued that Michael Summa constructively possessed the items found in the Cobalt. The State further stressed the photographs of Summa recovered from the electronic devices inside the vehicle.

The jury convicted Michael Summa of first-degree unlawful possession of a firearm and possession of a controlled substance with intent to deliver. The jury acquitted him of possession of an explosive.

In its sentencing brief, the State asserted that Michael Summa's prior manslaughter conviction should count as three points under RCW 9.94A.525(13).

During sentencing, the State declared that Summa's offender score was ten. The State asked for an exceptional upward sentence. The trial court rejected an exceptional sentence and imposed a standard-range sentence at the top of the ranges of each conviction: 102 months for unlawful possession of a firearm and 120 months for possession of a controlled substance with intent to deliver. The court ordered the sentences to be served concurrently.

## LAW AND ANALYSIS

Michael Summa appeals both the denial of his motion to suppress evidence and denial of his motion to dismiss after the State rested. He seeks reversal of both convictions. Summa also contends that the superior court imposed an unlawful sentence based on a miscounted offender score.

### Motion to Suppress

Michael Summa contends that probable cause did not support the search warrant authorizing the rummaging of the Chevrolet Cobalt. Summa underscores the identity of the bolting man as critical to a finding of cause since the Spokane officers lacked any reason to search the vehicle, despite the presence of a firearm and ammunition inside, unless a previous occupant happened to be a felon who could not lawfully possess guns. In turn, Officer William Braten lacked a reasonable belief to identify Summa as the fleeing individual. According to Summa, Braten's affidavit relies on hunches.

9

A search warrant must be supported by probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists when the affidavit provides facts and circumstances sufficient to reasonably infer that the defendant likely engaged in criminal activity and that evidence of the crime will be found at the place to be searched. *State v. Anderson*, 105 Wn. App. 223, 228, 19 P.3d 1094 (2001). Probability, rather than prima facie evidence of a crime, governs probable cause. *In re the Personal Restraint Petition of Yim*, 139 Wn.2d 581, 594-95, 989 P.2d 512 (1999). This reviewing court grants great deference to the trial court's finding of probable cause. *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981).

Mere suspicion or personal hunches cannot justify a search warrant. *State v. Patterson*, 83 Wn.2d 49, 53, 515 P.2d 496 (1973). An affidavit legally sufficient to justify the issuance of a search warrant must contain underlying facts and circumstances to establish probable cause. *State v. Anderson*, 37 Wn. App. 157, 160, 678 P.2d 1310 (1984).

Michael Summa relies on *State v. Anderson*, 37 Wn. App. 157 (1984). An unknown person stole cigarettes, candy, and soda from a service station. The responding officer learned of a party the previous night at a nearby residence. The officer claimed the stolen cigarettes were the same type smoked by the party residence's occupants. In an affidavit, the officer did not disclose how he knew what type of cigarettes the residents smoked. The officer stepped onto the property and noticed an old refrigerator in the yard.

10

The law enforcement officer opened the refrigerator door and found two full cases of soda matching the stolen brand. The officer then applied to the court for a warrant to search the house, where he found additional objects allegedly stolen from the store.

In *State v. Anderson*, this court ruled that the officer's affidavit failed to go beyond suspicion or mere personal belief that evidence of the burglary would be found in the house, noting:

> These facts do little more than raise a mere suspicion that evidence of the burglary may have been concealed in the residence. Any customer of the burglarized store with goods in his possession like that stolen from the store would have been subject to a search of his home under the theory advanced by the prosecutor. The affidavit did not establish that there was a fair probability that evidence of the burglary would be found in the residence.

*State v. Anderson*, 37 Wn. App. 157, 161 (1984). The court emphasized that the officer only knew that the soda in the refrigerator was the same brand as the stolen soda, but the officer could not confirm the refrigerated cans as being those that had been stolen. The occupants of the residence could have unfortuitously purchased the same brand of soda at numerous stores.

Unlike the circumstances in *State v. Anderson*, the facts outlined in William Braten's affidavit, to search the Chevrolet Cobalt for evidence of unlawful possession of a firearm, identified a specific person, not someone in general, who fled the alleyway and was later identified as Michael Summa. Upon seeing a police cruiser, Summa fled from a parked vehicle, and officers subsequently observed a gun holster and an ammunition

11

cartridge inside the vehicle. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

Michael Summa's flight from the Chevrolet Cobalt after standing next to the driver's side, his past criminal history, and the firearm and gun paraphernalia visible inside the car would lead a prudent and reasonable officer to believe a firearm to be inside the vehicle and to have been in the possession of Summa immediately before his departure. Summa's felony convictions and prohibition from possessing firearms would lead a reasonable officer to conclude Summa committed a crime and that evidence of the crime rested inside the Cobalt.

Sufficiency of Evidence

Michael Summa challenges his convictions for unlawful possession of a firearm and possession of a controlled substance with the intent to distribute. Both crimes require the State to show, beyond a reasonable doubt, the possession of an object. Summa argues that the State presented insufficient evidence of constructive possession of each object.

The State must prove every essential element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). When reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a

reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We

consider both circumstantial and direct evidence as being equally reliable. *State v.*

*Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). A sufficiency challenge concedes

the truth of the State's evidence and accepts the reasonable inferences that may be drawn

from it. *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). This standard of

review is highly deferential to the jury's determination and does not consider issues of

credibility, persuasiveness, or conflicting testimony. *State v. Davis*, 182 Wn.2d 222, 227,

340 P.3d 820 (2014).

The State relied on a theory of constructive possession. An individual may have

actual possession or constructive possession. *State v. Ibarra-Erives*, 23 Wn. App. 2d

596, 602, 516 P.3d 1246 (2022). Actual possession means the individual has physical

custody of the item. *State v. Ibarra-Erives*, 23 Wn. App. 2d 596, 602 (2022). A person

constructively possesses property when the individual holds dominion and control over

the object. *State v. Ibarra-Erives*, 23 Wn. App. 2d 596, 602 (2022). A person's

proximity to the property, such that the person could readily grab it, helps to establish

dominion and control over the object. *State v. Chouinard*, 169 Wn. App. 895, 899, 282

P.3d 117 (2012).

The State asserted that Michael Summa exercised dominion and control over the

vehicle and its contents based on circumstantial evidence from the vehicle search and

Sidney Gleave's statements. Gleave informed officers that he was at the scene to

purchase the vehicle from Summa. Evidence inside the car, including an electronic device with photos of Summa charging in the center console and a plastic case labeled with Summa's last name on the passenger-side floorboard, showed control and authority over the Chevrolet Cobalt. Surveillance footage depicted only Summa entering or reaching into the vehicle, while Gleave placed clothing on the hood without accessing the interior. This evidence reasonably supported the conclusion that Summa was the driver, owner, or possessor of the vehicle and its contents.

Michael Summa and Sidney Gleave were both prohibited from possessing firearms due to prior felony convictions, but only Summa fled on noticing the police. Flight shows consciousness of guilt. *State v. Slater*, 197 Wn.2d 660, 667, 486 P.3d 873 (2021). Summa also testified under oath at a forfeiture hearing that he always carried a firearm. After drawing all reasonable inferences in favor of the State, we conclude that a rational jury could have found Summa guilty beyond a reasonable doubt.

## Offender Score

Michael Summa argues that the sentencing court erred in calculating his offender score by including felony juvenile convictions. He tersely writes in his brief: "The sentencing court erred calculating Mr. Summa's offender score by including felony juvenile convictions." Appellant's Opening Brief. Summa's brief provides no argument or analysis. This Court does not consider conclusory arguments unsupported by citation to authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801,

14

809, 828 P.2d 549 (1992); *In re the Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008).

Michael Summa also argues that the sentencing court imposed an erroneous standard-range sentence due to a miscalculated offender score. A sentencing court exceeds its statutory authority when it imposes a sentence based on a miscalculated offender score. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). Courts must correct an erroneous sentence upon its discovery. *In re the Personal Restraint Petition of Call*, 144 Wn.2d 315, 331-32, 28 P.3d 709 (2001).

RCW 9.94A.525(13) establishes a special scoring rule for drug offenses when the offender also has an earlier sex or serious violent offense:

> If the present conviction is for manufacture of methamphetamine count three points for each adult prior manufacture of methamphetamine conviction. *If the present conviction is for a drug offense and the offender has a criminal history that includes a sex offense or serious violent offense, count three points for each adult prior felony drug offense conviction*.

(Emphasis added.) In such a situation, however, the statute triples only the earlier drug offenses, not the prior sex or serious violent offenses.

The State acknowledges that the parties incorrectly tripled Summa's previous manslaughter conviction when calculating his offender score for his drug offense. The State, however, characterizes the computation error as trivial, formal, academic, which in no way affected the outcome of the case. *State v. Gonzales*, 90 Wn. App. 852, 855, 954 P.2d 360 (1998).

15

Michael Summa bore no prior adult felony drug conviction to triple. Therefore, his offender score for the current drug offense should have been eight, not ten. Nevertheless, the sentencing grid for drug offenses, unlike other offenses, caps at six. So Summa's score would continue to exceed the threshold. The standard range would remain at "60+–120 months" of total confinement. RCW 9.94A.517. For this reason, the State urges this court not to remand for resentencing. The State relies on the rule that, when resentencing would result in imposition of the same term remand is unnecessary. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).

We disagree with the State. The sentencing court may have previously sentenced Michael Summa to the zenith of the standard range for both crimes only because Summa's offender score exceeded the cap of six by four points. Conceivably the sentencing court might lower the sentence because the score now exceeds the cap by only two points. The trial court should exercise its discretion while employing the correct offender score.

CONCLUSION

We affirm Michael Summa's convictions for unlawful possession of a firearm and possession of a controlled substance with intent to distribute. We remand for resentencing using the correct offender score.

16

No. 39889-7-III
*State v. Summa*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.